## VAN DEUSEN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1907.)

No. 1,302.

1. POST OFFICE—USE OF MAILS TO DEFRAUD—ELEMENTS OF OFFENSE.

A scheme by the owner of a saloon, to be effected by opening correspondence through the mails, to induce different persons to each purchase a half interest in his saloon as a partner, and to pay largely more than it was worth, by misrepresenting its value and the amount of its profits, and to thus obtain their money without their receiving any equivalent therefor, held a scheme to defraud, within the meaning of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], and to be sufficiently charged in an indictment thereunder.

2. CRIMINAL LAW—TRIAL—MOTION TO STRIKE OUT TESTIMONY.

The action of the court in a criminal trial, in allowing to remain in the record a remark of a witness, the greater part of whose testimony was excluded, such remark, not being responsive to any question, and not having been called to the court's attention except by a general motion, at its close, to strike out all of the testimony of the witness, is not ground for reversal, especially where it fairly appears that the remark was overlooked by all parties, and was not prejudicial to defendant.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Plaintiff in error was convicted in the court below of violation of section 5480, Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3696] and sentenced to imprisonment in the penitentiary for the term of two years, together with a fine of two hundred dollars.

The errors principally relied on are, that none of the counts in the indictment sufficiently charge a scheme to defraud, in violation of the section named; that the evidence submitted was wholly insufficient to show a violation of the section named; that there was a fatal variance between the allegations of the indictment and the proof on the trial; and that the court erred in admitting into evidence certain proof—the chief error in that respect being that testimony was admitted showing that plaintiff in error's saloon license had been revoked by order of the mayor.

The averment in the indictment of the scheme to defraud is in the following language:

One Lloyd K. Jahn, then resident at Chicago aforesaid, one James B. McDermott, then resident at Chicago aforesaid, and one Kathryn G. McDermott, then resident at Chicago aforesaid, and a class of persons then resident within the said United States not capable of being resolved into individuals, and not capable, by reason of a want of information on the part of the said grand jurors, of being all named in this indictment, that is to say, such of the persons, being desirous of engaging in the saloon business in the said City of

Chicago, and of entering into a partnership to engage in such business in the said City, as should make answer to certain advertisements by him, the said Frank Van Deusen inserted and caused to be inserted in divers newspapers and public prints published in the said City of Chicago, to the effect following, that is to say:

"Saloon Partner Wanted—Old Established place, near city hall; honest man; each draw $125 month; small amount. Address D. 144, Daily News"

Which said scheme and artifice was a scheme and artifice which then and there had been devised by the said Frank Van Deusen to defraud the said persons so intended to be defrauded as aforesaid by inducing those persons respectively to purchase of him, the said Frank Van Deusen a one-half interest in a saloon business which he, the said Frank Van Deusen, was then conducting and carrying on in the said City of Chicago, and to pay to him, the said Frank Van Deusen, large sums of money for the said one-half interest, and to enter into partnership with him, the said Frank Van Deusen, in the said saloon business, under the pretense on the part of him, the said Frank Van Deusen, that the said business was then and there paying large net profits, to wit, profits amounting to from two hundred and Fifty dollars to Three hundred dollars per month and that the said persons respectively who should so purchase the said one-half interest in the said business and should so pay the said large sums of money to him, the said Frank Van Deusen, for the same would receive one-half of the net profits of the said business; and it was a part of the said scheme and artifice to sell the same one-half interest in the said business to several different persons at the same time, that is to say, to sell the said one-half interest in the said business to different ones of the said persons so as aforesaid intended to be defrauded when the same already had been sold by him, the said Frank Van Deusen, to one or more others (as the case might be) of the said persons so intended to be defrauded and when he did not own the same. And the grand jurors further charge that at the time of the devising, and at the time of the executing, of the said scheme and artifice, the said business was not paying large net profits, and was not paying net profits amounting to from two hundred and fifty dollars to three hundred dollars per month, or any such sum, and was paying little or no net profits, as he, the said Frank Van Deusen, then and there well knew, and the said Frank Van Deusen then and there intended that the said several persons who should pay their moneys for a one-half interest in the said business should not receive respectively, and that none of them should receive, one-half of the net profits in the said business, (if there should be any net profits in the said business,) and then intended that the said persons respectively should receive little or none of the net profits of the said business, (if there were any) and then intended that the said persons respectively should receive none of the net profits of the said business (if there were any) which he could prevent them from receiving; and the said Frank Van Deusen did merely intend by this means to obtain possession of such moneys as should be paid to him, the said Frank Van Deusen, by the said person so intended to be defrauded, for purchasing a one-half interest in the said saloon business, and the same moneys to convert to the own use of him, the said Frank Van Deusen, without rendering any thing or service of value to the said persons therefor, and thereby to defraud those persons of the same; which said scheme and artifice to defraud, he, the said Frank Van Deusen, when so devising the same, and when executing the same as hereinafter in this court mentioned, intended to effect, and which said scheme and artifice was a scheme and artifice to be effect, by opening correspondence and communication, by means of the Post Office Establishment of the said United States, with the several persons so intended to be defrauded, and by inciting those persons to open communications with him, the said Frank Van Deusen, by means of the Post Office Establishment of the said United States.

The further facts are stated in the opinion.

Samuel H. Trude, for plaintiff in error.
Robert W. Childs, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts).

We are of the opinion that the scheme averred in the indictment is within the scheme and artifices contemplated by section 5480; that the scheme is sufficiently pleaded; and that it is sustained by the proof. An elaboration of that conclusion is unnecessary. The case in this respect is fully sustained by the following decisions. U. S. v. Bernard (C. C.) 84 Fed. 634; Stokes v. U. S., 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667; U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Durland v. U. S., 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709; U. S. v. Loring (D. C.) 91 Fed. 881; and this disposes of all the errors principally relied upon, except the one relating to the admission of evidence of the revocation by the mayor of plaintiff in error's license.

The testimony on which that assignment of error is predicated is as follows:

Edward L. Foreign, called as a witness on behalf of the prosecution, testified as follows: Am a police officer. I understand the saloon at 155 Washington Street is still running; I understand a man by the name of Davis is the proprietor. I do not know of my own knowledge. I cannot state whether Mr. Van Dusen is in business there at present. I think not. I met Mr. Van Dusen at 155 Washington Street on March 10th. I asked him if he was Mr. Van Dusen and he said yes sir. I told him I would like to see his license. He brought me over to the bar and showed me the license, and I took the number and the name "Frank Van Dusen." Which appeared to be on the license and he asked me if I was taking the numbers of licenses all around, and I told him no, only that place. And he asked me the reason and I told him he had not conducted a proper place of business there.

Mr. Foos: I move that be stricken out.

The Court: How is that material?

Mr. Childs: I want to show by this witness that the license had been revoked.

The Court: That is stricken out. If you want to show that it was revoked, show it.

Mr. Childs: Show he is not in business now.

Mr. Foos: We do not contend he is in business, your Honor.

The Court: Q What do you know about that?

A Why I was sent there to investigate by the chief of police and Mr. ———— and myself got three affidavits, and he recommended revocation of the license to Mayor Dunne who revoked it.

Mr. Foos: I do not see any materiality in that, your Honor.

The Witness: Here is a revocation.

The Court: That is the best evidence.

Mr. Childs: I offer this revocation of license in evidence signed by E. H. Dunne, mayor.

The Witness: That is the original and one copy was given to Mr. Van Dusen.

Mr. Childs: Q Is this the original revocation?

A Yes, sir, and the endorsement is on the back by the police officer.

Mr. Childs: I offer this revocation in evidence.

Mr. Foos: I do not see where that is material your Honor, in any way, shape or form of examination, except to excite the prejudice of the jury.

The Court: How is it material?

Mr. Childs: Why to show that he was carrying on this business and that his license was revoked.

The Court: What is the date of the revocation?

A March 14th, 1906.

Mr. Foos: What does that amount to?

The Court: Was he advertising for partners after that?

Mr. Childs: Not after that, but this was shortly after Mr. McDermott went into the business with him which was the 12th of February.

The Court: I do not believe it is material; objections sustained.
Mr. Foos: I move that the testimony of the witness be stricken out.
The Court: Motion overruled. Exception by the defendant.

It will be noted that early in the colloquy, when counsel for plaintiff in error asked the court to strike out the testimony of the witness relating to witness' taking the number of plaintiff in error's license, and the reason for taking such number, that plaintiff in error had not conducted a proper place of business, the same was stricken out; and, also, that on plaintiff in error's objection to the fact of revocation going in as evidence, such fact was excluded. Now the court ought to have excluded as well, the further remark of the witness (a remark not called for however, by any question put) that he was sent there by the Chief of Police to investigate, that he recommended the revocation of the license, and that it was revoked—a failure on the part of the court that would have constituted error, had the attention of the court been specifically called to its presence in the record, and a motion to strike out been made.

But the attention of the court was not specifically called to this portion of the witness' testimony. The motion to strike out was to strike out the whole of the witness' testimony. Presumably, had this remark of the witness—a remark as already stated wholly irresponsive to any inquiry put—been called to the attention of the court, as something still standing in the record, a motion to strike it out would have prevailed; for the court's mind on that subject had already been twice indicated. Nor can we infer that this testimony was referred to subsequently during the course of the trial; for in that case the court doubtless would have stricken it out, as the other statements were stricken out. So that, these being the circumstances, the matter now objected to appears to have been one of those occurrences, that in a trial of considerable length are lost sight of, and exert no final effect upon the verdict—matters raked out of the record only under the closer inspection that preparations for a court of review brings on.

Now when a writ of error is predicated upon matter appearing in the record like this, the party who brings the writ must show that he has been reasonably specific in calling it to the attention of the trial court. He cannot be permitted to bring such matters to the surface for the first time in the court of review. That would be unfair, both to the court that tried the case, and to the general administration of criminal justice.

Judgment is affirmed.