7 N.J. Super. 173 (1950)
72 A.2d 523
ART WIRE & STAMPING COMPANY, A CORPORATION, PLAINTIFF-RESPONDENT,
v.
ERIC P. JOHNSON AND WALDEMAR JOHNSON, TRADING AS PIX MANUFACTURING COMPANY, DEFENDANTS-APPELLANTS. ART WIRE & STAMPING COMPANY, A CORPORATION, PLAINTIFF-APPELLANT,
v.
ERIC P. JOHNSON AND WALDEMAR JOHNSON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1949.
Decided April 10, 1950.
*176 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. John Milton argued the cause for the appellant, Art Wire & Stamping Co. (Mr. Gardner K. Benson, attorney).
Mr. Abraham I. Mayer argued the cause for the respondents, Eric P. Johnson and Waldemar Johnson (Messrs. Mayer & Mayer, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
Plaintiff, Art Wire & Stamping Company, appeals from the judgment of the Chancery Division, granting injunctive relief against defendants on the grounds that (1) broader relief should have been granted to prevent defendants from disclosure of its secret form of winding machines and (2) that the court erred in not directing defendants' machines destroyed. On cross-appeal, defendants contend (1) that the employment contract expired in 1940; was not thereafter renewed and the court erred in granting plaintiff's injunctive relief; (2) that plaintiff failed to sustain the burden of proof; and (3) that the court erred in enjoining defendants from building machines in the proscribed territory and in its determination that defendants had rendered services to Pix Manufacturing Company in violation of the contract.
Plaintiff, Art Wire & Stamping Company, filed its bill of complaint in the former Court of Chancery in 1947, against defendants, Eric P. Johnson and Waldemar Johnson, trading as Pix Manufacturing Company. Plaintiff sought the following *177 relief: (1) specific performance of an agreement made in 1934 between it and the individual defendants; (2) an injunction against defendants' use or disclosure of the principle of certain swivel winding machines, with which principle defendants became familiar during their employment by plaintiff; (3) discovery of any disclosures of the designs and principle of such machines to others; (4) a surrender to the court of the designs or machines, assembled or partially assembled, and (5) for such additional relief that might be just and equitable. Defendants' motion to strike the bill of complaint was denied. Art Wire & Stamping Co. v. Johnson, 141 N.J. Eq. 101 (Ch. 1947); affirmed, 142 Id. 723 (E. & A. 1948). Thereafter defendants filed an answer to which was annexed a copy of the agreement of August, 1934, the third paragraph of which provided:
"The parties of the second part further agree that they will not, during the term of this agreement and for five (5) years thereafter, directly or indirectly engage in the constructions of any machines, tools or dies for the production of any article now manufactured or developed during the period of this employment, nor directly or indirectly enter the employment of or render any services to any other person, partnership or corporation, engage in the business of manufacturing wire or stamped articles manufactured by the said corporation, or developed during the course of this employment, within a radius of one thousand (1,000) miles of the City of Newark, County of Essex, State of New Jersey; and that during this said term of employment and for five years thereafter they will not engage in such manufacturing business on their own account or become interested therein, directly or indirectly as individuals, partners, stockholders, directors, officers, clerks, principals, agents, employees, trustees, or in any other relations."
The separate defenses of defendants' answer allege: (1) that the 1934 contract expired in 1940; (2) that the covenant above-quoted was unreasonable as to duration and to area; (3) that the swivel winding machines were of a known and not a secret design. Prior to trial, the complaint was amended to demand that defendants disclose and account for all profits of its business, and prayed for a judgment for plaintiff's loss of profits.
*178 After trial, judgment was entered enjoining defendants until January 27, 1950, within a radius of one thousand miles of Newark, New Jersey, from constructing any machines, tools or dies for producing fishing swivels, from entering the employment of any one so engaged and ordering them to account for profits derived from the use of swivel winding machines within the one thousand mile radius from April, 1947.
Plaintiff bases its right to broader relief upon the contention that since the contract is silent with reference to trade secrets, the court may imply such a provision. The contract defined the nature and extent of the obligations of the parties, providing, inter alia, "Whereas in the course of such employment, the parties of the second part may be assigned to duties that may give them knowledge or information of such confidential nature, or other matters relating to the manufacture and conduct of the business of the party of the first part as will in the opinion of the said corporation result, if such information were disclosed, in irreparable injury to the said corporation." The negative covenant providing for the nature and extent of the required protection follows this recital in the third paragraph of the agreement. The machine was developed and built during the defendants' employment and the life of the contract. The defendants' duties thus gave them knowledge and information of a confidential nature. The agreement so stated and forbade disclosure thereof. There is no room for the implication contended for by plaintiff. The contract covered the situation and the parties are bound thereby. Irvington Varnish, &c., Co. v. Van Norde, 138 N.J. Eq. 99 (E. & A. 1946); Ideal Laundry Co. v. Gugliemone, 107 Id. 108 (E. & A. 1930). We find no conflict between the provisions of the contract; they are in reciprocal relation. By making an express contract, the parties have set forth those terms which they deem sufficient for their protection. They cannot now claim greater rights outside of the contract.
Plaintiff contends further that the machines of the defendants should be destroyed. In view of our determination *179 that the contract fixes the respective rights of the parties and the protection is limited to five years, it would be unreasonable to now destroy the machines, particularly since the time limitation has expired.
Finally, the plaintiff argues that the clause restricting defendants from engaging in the business or entering the employ of another in such business for five years after termination of the agreement, should not have been severed from that part of the provision immediately preceding same. It seems to us that the protection afforded by the clause is properly read alone. The Chancery Division correctly construed the various parts of the negative covenant and properly held it to be illegal in view of the fact that the last part was unlimited as to area. Taylor Iron and Steel Co. v. Nichols et al., 73 N.J. Eq. 684 (E. & A. 1908).
The defendants contend that the contract had expired in 1940; therefore, there is no contract to be enforced. They argue that the first appeal had merely determined the sufficiency of the complaint, and that at the trial no proof was adduced of an intention to continue the contract in existence. The plaintiff argues that the proof showed a contrary intent. It is undisputed that defendants continued in the employ of the plaintiff until 1945. Such circumstances as the irregularity of notice of termination of employment, increased wages of defendants, change of designation of defendants' position, do not invalidate the legal effect of the renewal of the contract by continued employment.
Defendants next argue that the court erred in finding that they violated their covenant by entering the employ of the Pix Manufacturing Company, a partnership composed of the two defendants. It seems clear to us that the third part of the covenant was intended to prevent the defendants from going into business on their own account, but this provision of the contract was illegal since no restriction as to area was provided for. Therefore, it could not have been the intention of the parties, when reference was made to "other" partnership in the second part of the negative covenant, to *180 mean the partnership of the defendants. It is clear from a careful reading of the clause that such was not their intention. Erbaugh v. United States, 173 F. 433 (C.C.A. 8, 1904). While the court erred in this respect, the error is of no consequence, in view of the violation of the first part of the covenant by the defendants not to construct such machines, which prevents their use by defendants after illegal construction.
The defendants, in arguing their final ground of appeal, contend that the court erred in making a reference for an accounting, asserting that the pleadings did not call for it; that, on a breach of covenant, the relief afforded calls for a showing of damage sustained by the plaintiff and not the profits made by the defendants. The reference to the scope of the pleadings is specious since the pre-trial order removed any doubt as to the scope of the relief requested. The pertinent portion of the pre-trial order provides that "* * * the plaintiff have leave to amend the complaint as follows:
"Prayer No. 7: That the said defendants may be ordered to make a full and true discovery and disclosure of all receipts, expenditures and profits pertaining to its business; and
"That defendants may be required to account for the profits of said business; and
"That defendants may be ordered to pay to plaintiff its rightful share of the monies which may be found due to it on such an accounting; * * *."
Rule 3:16 sets up the pre-trial procedure and the pre-trial order here, not having been modified before or during the trial, controlled the course of the trial. Jenkins v. Devine Foods, Inc., 3 N.J. 450 (Sup. Ct. 1950). The court held that "* * * The plaintiff will be entitled to such profits as it may have lost by reason of the defendants' violation of the covenant." The judgment entered orders defendants to "account for profits received by or chargeable to them from the use of the machines, tools, or dies for the production and sale within a radius of one thousand miles of Newark, New Jersey, of fishing swivels from and after April, 1947, being *181 the time they were in the employment or rendered services to the Pix Manufacturing Company * * *." The defendants apparently misconceive the nature of the violation of the covenant. In our consideration hereinabove of plaintiff's first point, the contract encompassed the protection of the manufacture of the machine. In the case of Vulcan Detinning Co. v. American Can Co., 72 N.J. Eq. 387 (E. & A. 1906), 80 Id. 443 (E. & A. 1912); 81 Id. 510 (E. & A. 1913), analogous to that under review, the language used by Chief Justice Gummere, speaking for the Court of Errors and Appeals, is applicable here, viz.:
"* * * It is to be borne in mind that when, in a suit to restrain the use of a secret process, the complainant also seeks an accounting of the profits made by the defendant, he elects to treat the latter as a quasi-trustee, rather than as a wrong-doer who should be compelled to answer in damages for his wrongful acts. * * * The proceeding is not one for the punishment of a wrong-doer, not one for the imposition of a penalty upon a person who has been guilty of a fraud, not one for the ascertainment of the sum which will compensate the complainant for the loss suffered by it from the wrongful use of the secret process by the defendant, but one taken for the sole purpose of ascertaining what, in fact, was the net profit made by the defendant company in the conduct of the business during the period of the accounting. In an account so taken the defendant is entitled to be credited with all expenditures made by it in the carrying on of the business, and for the benefit of the business; * * *."
In the case sub judice, the plaintiff is treating the defendants as quasi-trustees, as in the Vulcan Detinning Co. v. American Can Co. case, rather than wrong-doers who should be compelled to answer in damages for their wrongful acts. Consequently, the measure of damages for breach of the agreement not to compete, is not applicable.
The judgment is affirmed, except as hereinabove stated.